Gary S. Graifman, Esq. (GSG-2276)
**KANTROWITZ, GOLDHAMER
& GRAIFMAN, P.C.**
747 Chestnut Ridge Road - Suite 200
Chestnut Ridge, New York 10977
ggraifman@kgglaw.com
Tel: 845-356-2570
Fax: 845-356-4335



*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**09 CIV. 9037**

------------------------------------------------------------X

JEFFREY P. ORLAN, INDIVIDUALLY AND ON
BEHALF OF ALL OTHERS SIMILARLY SITUATED,

        Plaintiff,

    v.

SPONGETECH DELIVERY SYSTEMS, INC.,
MICHAEL L. METTER, STEVEN MOSKOWITZ
FRANK LAZAUSKAS, AND RM ENTERPRISES
INTERNATIONAL, INC.,

        Defendants.

------------------------------------------------------------X

CASE No.:

<u>CLASS ACTION</u>

**COMPLAINT FOR
VIOLATION OF THE
FEDERAL SECURITIES LAWS**

**JURY TRIAL DEMANDED**

Plaintiff, Jeffrey P. Orlan, individually and on behalf of all other persons similarly situated,

by his undersigned attorney, alleges the following upon personal knowledge with respect to his own

acts, and upon facts obtained through an investigation conducted by counsel, including: (a) review

of relevant public filings by SpongeTech Delivery Systems, Inc. ("SpongeTech" or the "Company")

with the Securities and Exchange Commission (the "SEC"); (b) review and analysis of defendants'

public documents, conference calls and press releases; (c) review and analysis of securities analysts'

reports and advisories concerning the Company; and (d) information readily obtainable in the public

domain. .

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than defendants, who purchased the securities of SpongeTech between April 15, 2008 and October 5, 2009, inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of federal securities laws (the "Class").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the"Exchange Act") (15 U.S.C. §78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. §131.

4.      Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) as a substantial part of the conduct complained of herein occurred in this District.

5.      Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications and facilities of the national securities exchange with the acts, conduct and other wrongs alleged herein.

## PARTIES

6.      Plaintiff, Jeffrey P. Orlan, purchased SpongeTech common stock during the Class Period as set forth in his certification, filed herewith, and has suffered damages as a result thereof.

7.      Defendant, SpongeTech, is a Delaware Corporation with its principal executive

offices located at 10 West 33rd Street, Suite 518, New York, New York 10001. SpongeTech designs, produces, and markets reusable cleaning products, *i.e.* soap-filled sponges, for car care and household uses. The Company sells its products through certain retail channels and through infomercials. At all relevant times herein, SpongeTech's common stock was an actively traded issue on the NASDAQ Bulletin Board under tickers "SPNG.OB" and "SPNGE.OB".

8.    Defendant Michael Metter ("Metter"), at all relevant times herein, was and is the Company's Chief Executive Officer, President and a Director. According to the Company's annual report for the fiscal year ended May 31, 2008 filed on Form 10-K with the SEC or about on August 29, 2008 (the "2008 10K"), Metter owns 7.7 million shares of Company common stock and 4,000,000 shares company class B stock, representing 26.81% of all available votes of the Company.

9.    Defendant Steven Moskowitz ("Moskowitz"), at all relevant times herein, was and is the Company's Chief Operating Officer, Chief Financial Officer, Principal Accounting Officer, Secretary, Treasurer and a Director. According to the 2008 10K, Moskowitz owns 6.1 million shares of the Company common stock and 4,000,000 shares company class B stock, representing 26.70% of all available votes of the Company.

10.    Frank Lazauskas ("Lazauskas"), at all relevant times herein, was and is one of the Company's Directors. According to the 2008 10K, Lazauskas owns 10.8 million shares of Company common stock and 2,000,000 shares company class B stock, representing 13.86% of all available votes of the Company.

11.    Metter, Moskowitz, and Lazauskas are collectively referred to hereinafter as the "Individual Defendants."

12.    Defendant RM Enterprises International, Inc. ("RM Enterprises") is an entity

3

controlled by defendants Metter, Moskowitz and Lazaukas. RM Enterprises is a controlling

shareholder of SpongeTech. According to the Company's annual report filed on Form 10KSB with

the SEC on or about August 29, 2008, RM Enterprises owns 49.32% of the Company's common

stock. According to that same Form 10KSB, RM Enterprises' address is the same as SpongeTech's

address. In subsequent SEC filings by SpongeTech, SpongeTech identifies RM Enterprises as its

"majority shareholder."

      13.      According to the 2008 10K, Metter, Moskowitz and Lazaukas share ownership of

SpongeTech gave them 67.37% of the Company's vote.

      14.      In the Company's SEC filings during the Class Period, it admits that Metter,

Moskowitz and Lazaukas are each controlling persons of the RM Enterprises.

      15.      Including the voting power of RM Enterprises (16.90%), the Individual Defendants

owned and controlled approximately 84.27% of the voting stock of SpongeTech.

      16.      Each of the Individual Defendants and RM Enterprises:

            (a)      directly participated in the management of the Company;

            (b)      was directly involved in the day-to-day operations of the Company

at the highest levels;

            (c )      was privy to confidential proprietary information concerning the

Company, its business and operations;

            (d)      was involved in drafting, producing, reviewing and/or

disseminating the false and misleading statements and information alleged herein;

            (e)      was aware of or recklessly disregarded the fact that the false and

misleading statements were being issued concerning the Company; and

(f)    approved or ratified these statements in violation of the federal securities laws.

17.    As officers, directors and controlling persons of a publicly-held company whose common stock is and was registered with the SEC pursuant to the Exchange Act, and was traded on the NASDAQ Bulletin Board and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate accurate and truthful information promptly with respect to the Company's financial condition and to correct any previously-issued statements that had become materially misleading or untrue to allow the market price of the Company's publicly-traded stock to reflect truthful and accurate information.

18.    SpongeTech is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondent superior* and common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

19.    The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputable to SpongeTech under *respondeat superior* and agency principals.

## SUBSTANTIVE ALLEGATIONS

20.    The Class Period begins on April 15, 2008 when the Company filed with the SEC, a materially false quarterly report on Form 10-QSB for the third quarter ended February 28, 2007. Attached to the 10QSB were separately signed Sarbanes-Oxley Act of 2002 ("SOX") certifications of defendants Metter and Moskowitz. Both Metter and Moskowitz certified that the Company's financial statements were accurate, that the financial statements did not omit to state a material fact, and that "any fraud, whether or not material, that involved management or other employees who

have a significant role in the registrant's internal control over financial reporting" was disclosed to the Company's auditors.

21.    On August 29, 2008 the Company filed with the SEC, a materially false annual report on Form 10-KSB for the year ended May 31, 2008.  The 10-KSB identified following customers of the Company:

> During the fiscal year ended May 31, 2008, three customers for an aggregate of approximately 70.5% of our sales.  Our three largest customers during the fiscal year ended May 31, 2008 are SA Trading Company, US Asia Trading, and Dubai Export Import Company.

22.    The 10-KSB was signed and separately certified pursuant to SOX by defendants Metter and Moskowitz.

23.    On October 15, 2008 the Company filed with the SEC, a materially false quarterly report of Form 10-Q for the first quarter ended August 31, 2008.  The 10-Q was signed and separately certified pursuant to SOX by defendants Metter an Moskowitz.

24.    On January 8, 2009, the Company issued a materially false announcement entitled, "SpongeTech® Delivery Systems, Inc. Updates to Shareholders on Agreement with RM Enterprises."  The announcement stated in relevant part:

> SpongeTech(R) Delivery Systems, Inc., America's Cleaning Company (TM), (OTC Bulletin Board: SPNG) is pleased to announce that the SpongeTech® Board of Directors is retiring seventy-nine million shares (79,000,000) of SpongeTech(R)'s common restricted (R144) stock from RM Enterprises.  This stock will be retired to the Company's Treasury.  Upon completion of this transaction, RM will still own approximately 600,000,000 restricted shares.  The Board states that further share reductions are being contemplated.  Michael Metter, CEO of SpongeTech(R) comments, "This initial transaction represents the first step in the restructuring of the corporate capitalization so that the company can place itself in the best possible position for future growth.  The Company is exploring other viable options for any and all possible opportunities that may present themselves.  It is important to note that this is only the first step of the process but not the end.  The Company believes that the stock is being artificially manipulated and as such is currently examining

6

several options that can be employed for the purpose of enhancing shareholder value."

25.     On January 14, 2009 the Company filed with the SEC, a materially false quarterly report on Form 10-Q for the second quarter ended November 30, 2008. The 10-Q was signed and separately certified pursuant to SOX by defendants Metter and Moskowitz.

26.     On April 20, 2009 the Company filed with the SEC, a materially false quarterly report on Form 10-Q for the third quarter ended February 28, 2009. The 10-Q was signed and separately certified pursuant to SOX by defendants Metter and Moskowitz.

27.     On June 9, 2009, the Company issued a materially false press release entitled "SpongeTech Delivery Systems, Inc. Announces Estimated Gross Revenues for Fiscal Year 2009 Exceeding $50 Million SpongeTech® Estimates Net Profit Pre-Tax of Approximately $10 Million." The announcement stated in relevant part:

> SpongeTech® Delivery Systems, Inc., America's Cleaning Company™, (OTCBB: SPNG - News), today announced that its Fiscal Year ending May 31, 2 009 gross revenues have exceeded $50 million with record profitability of approximately $10 million pre-tax. The revenues generated during the 4th quarter were substantially higher than any other quarter in the Company's history.

28.     On September 16, 2009, the Company issued a press release entitled "SpongeTech® Delivery Systems Announces Delay in Filing of Its Form 10-K." The press release states in relevant part:

> As previously announced, SpongeTech, retained Robinson, Hill & Co., a Professional Corporation, following the resignation of Drakeford & Drakeford, LLC on July 16, 2009. Drakeford resigned as a result of the revocation of its registration by the Public Company Accounting Oversight Board ("PCAOB") which occurred on June 16, 2009. The transition to the new auditor has resulted in delays in completing the audit of SpongeTech's financial statements for fiscal 2009, as well as the re-audit of its financial statements for fiscal 2008, which the SEC notified SpongeTech on September 11, 2009 would be required as a result of the revocation of Drakeford's PCAOB registration.

7

29.     As explained below, the above documents and statements were materially false and misleading because:

(a)     Defendants were engaged in a stock manipulation scheme involving SpongeTech and RM Enterprises through undisclosed improper shorting of SpongeTech Stock by Defendants and the forging of certain opinion letters by SpongeTech in order for certain shareholders to sell their shares;

(b)     SpongeTech sold shares at a cost of 40% of market price, or at a greater discount below market price, to RM Enterprises, RM Enterprises then sold the shares at a significantly higher cost. The officers of SpongeTech are the same as those of RM Enterprises. Accordingly, these individuals obtained the revenue from the sale of these shares without disclosing this self-dealing. There is a reason to believe the selling of the shares by RM Enterprises is an undisclosed and improper public offering and, further constituted an undisclosed bonus and/or benefit. The money from the sale of the shares has not been transferred back to SpongeTech; and

(c)     The Company's reported revenue during the Class Period was false or misleading because as reported by the New York Post, many of the Company's customers' identities could not be verified and do not appear to exist.

## TRUTH BEGINS TO EMERGE

30.     On September 17, 2009 the New York Post issued an article entitled "Not Spongeworthy." The article disclosed accusations that "SpongeTech is running a stock manipulation scheme" which have made their way to the SEC. The article also revealed that the Company's former auditor, Drakeford & Drakeford, lost is accreditation from the PCAOB, requiring SpongeTech to have its previously reported financial statements for the last two years reaudited. The

8

article states as follows:

Not Spongeworthy

By KAJA WHITEHOUSE

*Last Updated:* 11:38 AM, September 17, 2009

*Posted:* 1:17 AM, September 17, 2 009

Maybe SpongeTech should use on of its sponges on its financial books.

While the company behind popular soap-filled sponges looks like it's flying high, and one of its ads at the US Open unexpectedly took center court when tennis star Serena Williams screamed at a line judge seated nearby, the Manhattan-based company's business tactics have raised questions with regulators.

The Securities and Exchange Commission has flagged SpongeTech's financial statements for the last two years because of the problems with the company's auditor. What's more, the company missed yesterday's deadline to file an annual financial report with the SEC.

And its ticker is in jeopardy of being tagged with an "e" – the financial equivalent of a scarlet letter that warns investors that the company hasn't complied with the SEC reporting rules.

Meanwhile, the company's complex dealings with penny shares have lead to accusations that SponeTech is running a stock manipulation scheme – complaints that have made their way up to the SEC.

SpongeTech, which sells its wares through infomercials, posted an eye-popping 900 percent surge in sales, according to a June press release reporting that revenue had hit $50 million for the 12 months ended in May, vs. $5.6 million a year earlier.

But on Friday, SpongeTech received a letter from the SEC ordering it to redo its financial statements for the last two years, including the one that just ended.

Drakeford & Drakeford, a firm with offices in three cities, including Los Angeles and New York, but just one partner, was SpongeTech's auditor.

Drakeford lost its accreditation from the Public Company Accounting Oversight Board on June 16, according to a letter from the SEC.

"It has nothing to do with us," SpongeTech CEO Michael Metter told The Post.

9

But SpongeTech's replacement auditor, Robinson Hill & Co., doesn't appear to be in the best standing with the PCAOB, either.

In a report earlier this year, the auditing watchdog blasted the Utah firm for numerous "audit deficiencies." The PCAOB determined that Robison "did not obtain sufficient competent evidential matter to support its opinion" on its clients' financial statements.

Metter acknowledged the report to The Post, saying he and his team, "didn't know that" when they hired Robison in July. He said SpongeTech hired Deloitte & Touche to "oversee" Robison's work for 2008 and 2009, and to take over. Metter also said that SpongeTech has asked the SEC not to penalize it for the late filing.

Meanwhile, the company's complex stock trail has raised suspicions of stock manipulation. Timothy Sykes, a penny-stock trader and author of a book about running a hedge fund in college, has publicly accused the company of being "a blatant pump and dump" scam.

More recently, SpongeTech has been publicizing a series of stock buybacks and reverse stock splits. Shareholders say that with all the activity, they have no idea how many shares SpongeTech now has outstanding.

Metter declined to provide a number, or comment on speculation about the trading, but he vowed that neither he nor his fellow officers have sold a single share of the stock. The same holds true for RM Enterprises, he said.

SEC filings name Metter and his chief operating officer, Steven Moskowitz, as "control persons" and directors of RM Enterprises. But Metter denied to The Post that he is an RM Enterprises officer, saying it was Moskowitz's relationship.

SEC Spokesman Kevin Callahan declined to comment, saying he cannot confirm or deny "the existence or non-existence" of any investigation.

31.    This announcement, issued before market open, caused the Company's stock to fall $.023 per share or 20.4% on September 17, 2009.

32.    On September 22, 2009, the New York Post issued a further article, entitled "Spongetech is All Wet." The article, citing a former Sponge Tech attorney, revealed that SpongeTech had forged dozens of legal documents in connection with the Company's issuance of stock. The article also raised questions about the legitimacy of the Company's reported revenues

10

and the SpongeTech's customers.  The article stated as follows:

Spongetech is all wet

By KAJA WHITEHOUSE

*Last Updated:* 2:12 AM, September 22, 2009

*Posted:* 2:12 AM, September 22, 2009

A former attorney for SpongeTech, a New York company known for making soap-filled sponges it sells through infomercials, says the company forged dozens of legal documents tied to its issuance of stock.

SpongeTech, which boast that sales skyrocketed 900 percent this year, received international attention earlier this month when tennis star Serena Williams screamed at a US Open tennis championship line judge in front of one of its ads.

But on Friday the company's stock was tagged with the financial equivalent of a scarlet letter: The letter "e" was appended to its ticker for failing to file financial results with the SEC.  The company says it had to restate its last two years of financial results because of a problem with its auditor, and as a result is late with its annual filing.

The accusations of forgery and "identity theft" come from Norfolk, Conn. Attorney Joel Pensley, who said in a letter to the Securities and Exchange Commission that he was "dumbfounded" to learn that his name was being used in "as many as one hundred opinion letters for various shareholders."

Pensley told the SEC that he would not have written such letters.  "I question the legality of the transactions," he wrote.

A copy of the letter obtained by The Post shows it was addressed to Robert Khuzami, head of the SEC's enforcement division.

Neither Pensley nor the SEC responded to repeated requests for comment, but Pensley's business partner, Maureen Abato, confirmed the letter's authenticity.

"Why would they want to run that risk?  I don't get it," said Abato, who is based in Brooklyn and whose name and address is on the

letterhead with Pensley's. "It raises questions about their whole operation."

Abato said that after learning about the documents, their firm, Pensley & Abato, sent a cease-and-desist letter to SpongeTech. She said SpongeTech CFO Steve Moskowitz claimed the company had authority to use the law firm's name in the legal documents, but agreed to stop.

In June SpongeTech projected a whopping $50 million in revenue for the fiscal year ended in May, up from $5.6 million for 2008. But those numbers have raised questions within the industry.

Michael Popovsky, CEO of LA-based sponge maker Spongeables, a SpongeTech rival, scoffs at the idea that a company that sells sponges with soap in them can generate $50 million in annual revenue.

"Impossible," he said. "Categorically not."

Popovsky said industry sales tend to be in the $5 million to $10 million range.

Among Popovsky's biggest customers are national retailers such as Wal-Mart, CVS/Caremark and Rite-Aid.

SpongeTech, by contrast, lists among its biggest customers several lesser-known companies, like New Century Media, which a SpongeTech spokesman said is "based in Europe," declining to provide further specifics. Another company, SA Trading, is based in Caracas, Venezuala, he said. The only US record of an SA Trading shows a now-defunct company incorporated in Illinois.

It's also unclear how many shares SpongeTech currently has outstanding. Prior to its last quarterly filing, the company had 1.2 billion shares outstanding, putting it on par with eBay and overshadowing shares outstanding at both Apple and Pfizer combined.

"I am shocked and aggrieved that my name and reputation could be sullied in this manner," Pensley said in the letter to Khuzami. Pensley said in the letter that he learned of the forgery from New Jersey stock services company Olde Monmouth Stock Transfer Co.

A letter from Olde Monmouth's attorney, Richard Fox, also

12

addressed to Khuzami, said the forged documents relate to stock issued to RM Enterprises, SpongeTech's largest shareholder. RM Enterprises is controlled by the company's executives, including Moskowitz and CEO Michael Metter, according to SEC filings. Metter recently denied to The Post that he's a director or officer of the company.

Fox, when reached by The Post, said he couldn't comment before abruptly hanging up the phone. *kaja.whitehouse@nypost.com*

33.     This article, issued before the market opened, caused the Company's stock to fall $0.015 per share or 12.5% on September 22, 2009.

34.     On September 25, 2009, the New York Post published another article entitled "SpongeTech client records spring leak." The article raised serious questions about the legitimacy of SpongeTech's customers. The article stated as follows:

SpongeTech client records spring leak

By KAJA WHITEHOUSE

*Last Updated:* 1:53 AM, September 25, 2009

*Posted:* 1:53 AM, September 25, 2009

Someone appears to be pulling the strings on the biggest clients of New York sponge maker and US Open sponsor SpongeTech.

In its third-quarter SEC filing, SpongeTech said that six customers "accounted for 99.4 percent of sales" – nearly $31 million in revenue -- for the first nine months of its fiscal year.

The firms are SA Trading Company, US Asia Trading, Dubai Export Import Company, Fesco Sales Corp., New Century Media and Walgreens.

All but one of those companies, Walgreens, is hard to track.

Their addresses cannot be verified, phone numbers were disabled within hours of calls from The Post, and the Web sites for three of the companies were created on the same day two weeks ago.

13

On Wednesday, at The Post's request, SpongeTech provided addresses, phone numbers and contacts for its largest customers through its outside investor relations firm, Lippert Heilshorn & Associates.

But efforts by The Post to verify the information fell flat.

Take, for example, Dubai Export Import Co. According to the document SpongeTech provided, it is located at 235 Peachtree St. NE, Suite 400, in Atlanta.

"They don't have an office here," said Julie Gudger, vice president of sales for Crown Office Suites, which leases offices in that building, including Suite 400. Gudger also had never heard of Ahmed Elsayed, the contact SpongeTech provided.

Gudger dismissed the notion they might have a virtual office. "I would know," she said.

A call yesterday to the Dubai Export Import number that Spongetech provided led to a receptionist who took a message for Elsayed. Within a few hours, the number was "disabled."

The Dubai Chamber of Commerce and Industry says it has no record of Dubai Export Import Co. Ditto for the Dubai Department of Economic Development, which issues licenses to companies doing business in Dubai.

Calls to the phone numbers SpongeTech provided for the other four companies also led to receptionists who took messages. They were all disabled shortly afterwards.

Misty Ryals, a receptionist for Select Office Suites, which rents out offices on the 5th floor of 116 W. 23rd St. in Manhattan, where SpongeTech says Fesco is located, said she has no record of Fesco Corp., nor of Jim Rogers, the contact SpongeTech provided.

SpongeTech said SA Trading is located at 111 NE 1st St., 3rd floor, Miami. A woman who works for Downtown Miami Partnership, which manages the property, said, "We have no other business on the 3rd floor but Excellent Executive Offices."

Carlson Ortiz, who answered the phone at Excellent Executive Offices, said, "I've been here for two years and I've never heard of

14

that name," when asked about SA Trading.

Web sites for Fesco, Dubai Export Import and SA Trading also shed little light. All three sites were created on Sept. 10, 2009, using Domains by Proxy, a service that blocks information about the site's owner.

35.    This article, issued before the market opened on September 25, 2009, caused SpongeTech's stock to fall $0.011 per share or 9.7% on that date.

36.    After market close on Friday, September 25, 2009, SpongeTech filed an 8-K with the SEC revealing that "[o]n September 18, 2009, the Company received a formal order of investigation issued by the SEC regarding possible securities laws violations by the Company and/or other persons." The 8-K also revealed that the "Company and its officers and directors received subpoenas requesting the delivery of certain documents." No explanation was provided as to why the Company delayed in disclosing this information to investors.

37.    On September 28, 2009, before the market-opened, the New York Post issued an article entitled "SEC Looks For SpongeTech Stain." The article stated as follows:

SEC Looks For SpongeTech Stain

By KAJA WHITEHOUSE

*Last Updated:* 9:24 PM, September 28, 2009

*Posted:* 1:28 AM, September 28, 2009

SpongeTech, a New York sponge maker that advertises at Yankee Stadium and Citi Field, is being investigated by the Securities and Exchange Commission for possible securities law violations.

In an 8-K filed with the SEC late Friday, the maker of sponges with soap already in them said it "received a formal order of investigation" regarding possible securities laws violations on Sept. 18. Its officers and directors have also received subpoenas for documents, the filing said.

15

The formal investigation comes as the company struggles to file its financial report for the fiscal year ended in May because its former auditor, Drakeford and Drakeford, is no longer accredited with the Public Company Accounting Oversight Board.

Earlier this month, The Post reported that the SEC had flagged SpongeTech's financial statements for the last two years because of problems with the company's auditor.

SpongeTech has hired Robison Hill to audit the 2009 results and Deloitte and Touche to work on the company's 2010 financials.

Deloitte's work with SpongeTech "cannot commence" until the company files its 2009 annual report with the SEC, Deloitte spokesman Keith Lindenburg told The Post, contradicting previous statements by SpongeTech CEO Michael Metter that Deloitte will oversee Robison's work on the 2009 audit.

SpongeTech has not responded to requests for comment.

38.    The September 25, 8-K and September 28 New York Post article caused the Company's stock to fall $0.017 per share or 21.5% on September 28, 2009.

39.    On October 1, 2009, GetFugu, Inc., a publicly traded company with which SpongeTech had previously announced a business relationship, filed an 8-K with the SEC revealing SpongeTech's market manipulation of its own stock and raised additional questions about the legitimacy of SpongeTech's operations. The 8-K states in relevant part:

**Item 7.01 Regulation FD Disclosure.**

On September 24, 2009, we terminated our relationship with SpongeTech Delivery Systems, Inc. and Vanity Events Holdings, Ltd., and rejected any proposed investment by either of them, due to allegations of wrongdoing against SpongeTech. No stock was ever issued to SpongeTech or Vanity.

We received $1.75 million of the proposed $5 million investment. Until we determine the full nature and extent of any wrongdoing by SpongeTech and its affiliates, we have a fiduciary obligation to retain the funds, and therefore are unable to return any funds at this time.

16

To date we have not been provided with sufficient information, and investigation remains ongoing. We have informed SpongeTech and Vanity that we will not accept any further funds, and that we will return the amounts received to date as soon as we are able.

On September 30, 2009, SpongeTech filed an action against us seeking return of the funds and other relief. The September 24, 2009 letter from us to SpongeTech, a copy which is attached to the complaint, states in pertinent part as follows:

**"In recent days, the management of GetFugu has become aware of the following information:**

**We have reason to believe that you have been engaging in short selling of Company stock in anticipation of your proposed investment in the Company in violation of federal securities laws.**

**SpongeTech has been publicly accused of forgery and identity theft in connection with attorney opinion letters allegedly forged by SpongeTech.**

In addition, **in researching these events, it came to our attention that the payor in each of the electronic wires described above was RM Enterprises International, Ltd., not SpongeTech or Vanity.** We are unsure about the connection of RM Enterprises with SpongeTech or Vanity. RM Enterprises was never considered by GetFugu to be a party to the proposed investment, and we were previously unaware of the existence of RM Enterprises. **We find troubling the fact that monies have come from this entity, rather than SpongeTech or Vanity as originally intended and as publicly announced by all parties.**

**In light of these events, we have concluded that GetFugu can no longer be associated with SpongeTech or Vanity, and our continued public association with SpongeTech and its potentially illegal activities is jeopardizing GetFugu and its continued viability.** We therefore have no choice but to immediately terminate any further negotiations regarding an investment in the Company or any other business transaction.

Please consider this a revocation of your pending investment transaction in the Company, effective immediately. The Company also rescinds any 'offer' that we may have made to issue or sell to you

our securities or provide you with our mobile search services, and any other type of business transaction. We also rescind the signature pages that our counsel sent to your counsel on September 10, 2009 in escrow pending completion of the definitive documents. No countersignature from SpongeTech or Vanity was ever received."

We believe that the lawsuit is completely without merit and that there is no reasonable likelihood of a material adverse result, particularly given the alleged wrongdoing by SpongeTech and that it never executed any of the proposed agreements and never sent us any funds. In the event that SpongeTech attempts to proceed with its action, we will vigorously defend, and will pursue all appropriate counterclaims.

Unless otherwise required by law, we disclaim any obligations to release publicly any updates or changes in our expectations or any change in events, conditions, or circumstances on which any forward-looking statements are based.

(emphasis added).

40.    The filing of the Form 8-K by GetFugu's on October 1, 2009, caused SpongeTech's stock to fall $.012 per share or 15% on October 2, 2009.

41.    On October 5, 2009, the SEC announced the temporary trading suspension of SpongeTech's stock. The announcement states in relevant part:

SECURITIES EXCHANGE ACT OF 1934 Release No. 60788 / October 5, 2009 The Securities and Exchange Commission ("Commission") announced the temporary suspension, pursuant to Section 12(k) of the Securities Exchange Act of 1934 (the "Exchange Act"), of trading in the securities of SpongeTech Delivery Systems, Inc. ("SpongeTech"), of New York, NY at 9:30 a.m. EDT on October 5, 2009, and terminating at 11:59 p.m. EDT on October 16, 2009.

The Commission temporarily suspended trading in the securities of SpongeTech **because of questions that have been raised about the accuracy and adequacy of publicly disseminated information concerning, among other things, the amount of sales and customer orders received by SpongeTech, investment agreements entered into by SpongeTech, and SpongeTech's revenues as reported in its financial statements.** In addition, SpongeTech has

18

not filed any periodic reports with the Commission since the period
ended February 28, 2009.

(emphasis added).

42.     Consequently, SpongeTech shareholders have been precluded from selling their

shares on the open market and the shares are currently worthless.

## NO SAFE HARBOR

43.     The statutory safe harbor provided for certain forward-looking statements does not

apply to any of the false statements alleged in this Complaint.  None of the statements alleged herein

are "forward-looking" statements and no such statement was identified as a "forward-looking

statement" when made.  Rather, the statements alleged herein to be false and misleading all relate

to facts and conditions existing at the time the statements were made.  Moreover, cautionary

statements, if any, did not identify important factors that could cause actual results to differ

materially from those in any forward-looking statements.

44.     In the alternative, to the extent that the statutory safe harbor does not apply to any

statement pleaded herein which is deemed to be forward-looking, the Individual Defendants are

liable for such false forward-looking statements because at the time each such statement was made,

the speaker actually knew and/or recklessly disregarded the fact that such forward-looking statements

were materially false or misleading and/or omitted facts necessary to make statements previously

made not materially false and misleading, and/or that each such statement was authorized and/or

approved by a director and/or executive officer of SpongeTech who actually knew or recklessly

disregarded the fact that each such statement was false and/or misleading when made.  None of the

historic or present tense statements made by the Individual Defendants was an assumption

underlying or relating to any plan, projection, or statement of future economic performance, as they

were not stated to be such an assumption underlying or relating to any projection or statement of future economic performance when made, not were any of the projections or forecasts made by the Individual Defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

## LOSS CAUSATION/ECONOMIC LOSS

45.    During the Class Period, the Individual Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated SpongeTech's stock price and operated as a fraud or deceit on purchasers of SpongeTech stock by misrepresenting the Company's financial condition and business prospects.    Once the Individual Defendants' misrepresentations and fraudulent conduct were disclosed to the market, SpongeTech's stock price reacted negatively as the artificial inflation was removed from it.    As a result of their purchases SpongeTech stock during the Class Period, Plaintiff and other members of the Class suffered economic loss.

46.    Individual Defendants' false and misleading statements had the intended effect and caused SpongeTech stock to trade at artificially inflated levels throughout the Class Period.

47.    As investors and the market became aware of SpongeTech's prior misstatements and omissions and that SpongeTech's actual financial condition and business prospects were, in fact, not as represented, SpongeTech's stock price reacted negatively, damaging investors.

## Applicability of Presumption of Reliance:
### Fraud-on-the-Market Doctrine

48.    At all relevant times, the market for SpongeTech's common stock was an efficient market for the following reasons, among others:

(a)    SpongeTech's stock met the requirements for listing, and was listed and actively traded on the NASDAQ Bulletin Board, a highly efficient and automated markets;

20

(b)    During the Class Period, on average hundreds of millions of shares of SpongTech stock were traded on a weekly basis, demonstrating a very strong presumption of an efficient market;

(c)    As a regulated issuer, SpongeTech filed with the SEC periodic public reports during the Class Period;

(d)    SpongeTech regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting service;

5.    SpongeTech was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period.  Each of these reports was publicly available and entered the public marketplace;

(f)    Numerous NASD member firms were active market-makers in SpongeTech stock at all times during the Class Period; and

(g)    Unexpected material news about SpongeTech was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

49.    As a result of the foregoing, the market for SpongeTech's common stock promptly digested current information regarding SpongeTech from all publicly available sources and reflected such information in SpongeTech's stock price.  Under these circumstances, all purchasers of SpongeTech's common stock during the Class Period suffered similar injury through their purchase of SpongeTech's common stock at artificially inflated prices, and a presumption of reliance applies.

21

## Applicability of Presumption of Reliance:
### The Affiliate Ute Presumption of Reliance

50.    Neither Plaintiff nor the Class need prove reliance-either individually or as a class-because under the circumstances of this case, which involves a failure to disclose the undisclosed stock manipulation and the nature and quality of the Company's purported sales, positive proof of reliance is not a prerequisite to recovery, pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128(1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.

## Applicability of Presumption of Reliance:
### Fraud Created the Market

51.    Plaintiff need not prove reliance under the Fraud Created the Market Presumption of reliance. *Shores v. Sklar,* 647 F.2d 462 (5th Cir. 1981) (en banc). But for the Defendants' pervasive misstatements and omissions and fraudulent scheme, SpongeTech's securities were unmarketable.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

52.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons who purchased the securities of SpongeTech during the Class Period and who were damaged thereby. Excluded from the Class are defendants, the current and former officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

53.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, SpongeTech;s securities were actively traded on the

22

OTCBB markets. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds of members in the proposed Class. Members of the Class may be identified from records maintained by SpongeTech or its transfer agent and may be notified to the pendency of this action by mail, using a form of notice customarily used in securities class actions.

54.    Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by defendants' wrongful conduct in violations of federal law that is complained herein.

55.    Plaintiff will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

56.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)    whether the misstatements and omissions alleged herein were made with scienter;

(c)    whether statements made by the Individual Defendants to the investing public during the Class Period misrepresented and/or omitted material facts about the business, prospects, sales, operations and management of SpongeTech; and

(d)    to what extent the members of the Class have sustained damages and the proper measure of damages.

57.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## FIRST CLAIM

### VIOLATION OF SECTION 10(B) OF THE EXCHANGE ACT AGAINST AND RULE 10B-5 PROMULGATED THEREUNDER AGAINST DEFENDANTS SPONGETECH, METTER, MOSKOWITZ, AND LAZAUSKAS

58.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

59.    This First Claim is asserted against defendants SpongeTech, Metter, Moskowitz and Lazauskas (collectively the "First Claim Defendants").

60.    During the Class Period, First Claim Defendants carried out a plan, scheme and course of conduct which was intended to, and throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase and/or sell SpongeTech's securities at the artificially inflated and distorted prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, individually and as a group, took the actions and made the statements, omissions and misrepresentations set forth herein.

61.    First Claim Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated

in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of SpongeTech as specified herein.

62.    First Claim Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of SpongeTech's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about SpongeTech and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of SpongeTech's securities during the Class Period.

63.    Each of the First Claim Defendants' primary liability, and controlling person liability, arises from the following facts: (1) First Claim Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each of the First Claim Defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each of the First Claim Defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports, and other data and information about the Company's finances, operations, and sales at all relevant times; (4) each of the First Claim Defendants was aware of the Company's dissemination of information to the investing public that they knew or recklessly disregarded was materially false

25

and misleading; and (5) each of the First Claim Defendants culpably participated in the wrongful conduct alleged herein.

64.    First Claim Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing SpongeTech's financial condition and future business prospects from the investing public and supporting the artificially inflated or distorted price of its securities. As demonstrated by defendants' overstatements and misstatements of the Company's financial condition and business prospects throughout the Class Period, defendants', if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

65.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of SpongeTech's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of SpongeTech's publicly-traded securities were artificially inflated or distorted, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the intergrity of the market in which the Company's securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, Plaintiff and other members of the Class acquired and/or sold SpongeTech securities during the Class Period at artificially high prices and were

damaged thereby.

66.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding SpongeTech's financial results, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired SpongeTech securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices or distorted prices at which they did.

67.     By virtue of the foregoing, the First Claim Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

68.     As a direct and proximate result of the First Claim Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

69.     This action was filed within two years of discovery of the fraud and within five years of Plaintiff's purchase of securities giving rise to the cause of action.

## SECOND CLAIM

### VIOLATION OF SECTION 20(A) OF THE EXCHANGE ACT AGAINST THE INDIVIDUAL DEFENDANTS AND RM ENTERPRISES

70.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

71.     This Second Claim is asserted against each of the Individual Defendants and RM Enterprises (the "Second Claim Defendants").

72.    The Second Claim Defendants acted as controlling persons of SpongeTech within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operation and/or intimate knowledge of aspects of the Company's revenues and earnings and dissemination of information to the investing public, the Second Claim Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.  The Second Claim Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued, and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

73.    In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

74.    As set forth above, SpongeTech and the certain Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

75.    By virtue of their positions as controlling persons, the Second Claim Defendants are liable pursuant to Section 20(a) of the Exchange Act as they culpably participated in the fraud alleged herein.  As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's

common stock during the Class period.

76. This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

**WHEREFORE,** Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is proper class action, designating Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Class Counsel;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and serverally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: October 27, 2009

Respectfully submitted,

**KANTROWITZ, GOLDHAMER**
**& GRAIFMAN, P.C.**

Gary S. Graifman, Esq. (GSG-2276)
747 Chestnut Ridge Road, Suite 200
Chestnut Ridge, New York 10977-6216
Telephone: (845) 356-2570
Fax: (845) 356-4335
ggraifman@kgglaw.com
Counsel for Plaintiff

30

## CERTIFICATION OF LEAD PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

JEFFREY P. ORLAN, being duly sworn, certifies as follows:

1.      I am an adult individual and make this Certification in support of the filing of the Complaint ("complaint") in this action and my request for appointment as a representative plaintiff in the within action.

2.      I have reviewed complaint the against SpongeTech Delivery Systems, Inc. (the "Company" or "SpongeTech"), related companies, and certain officers and directors described in the complaint filed by Kantrowitz, Goldhamer & Graifman, P.C. and approve the allegations made.  I authorize the filing of a motion for appointment as lead plaintiff by the law firm of Kantrowitz Goldhamer & Graifman, P.C.

3.      My purchases of the Company's shares, the securities which are the subject of this action, were not at the direction of counsel or in order to participate in this private action.

4.      I am willing to serve as a representative party on behalf of the class, including providing testimony at deposition and/or trial, if necessary.  I am willing to serve as a representative party either individually or as part of a group.  I understand that a representative party acts on behalf of other class members in directing the action.

5.      To the best of my current knowledge, I have made no transactions during the Class Period, as set forth in the complaint, in the securities that are the subject of the action except as follows:

1

| Date | Type of Transaction (E.g., Purchase or Sale) | Amount of Shares | Purchase Price Per Share |
|------|------|------|------|
| 6/11/09 | Purchase | 100,000.00000 | $0.21010 |
| 6/12 | Sale | 100,000.00000 | $0.08200 |

6.    I have not served or sought to serve as a class representative in a federal securities case in the last three years.

7.    I will not accept any payment for serving as a representative party on behalf of the Class beyond Plaintiff's pro rata share of any recovery, except for any award for reasonable costs and expenses directly relating to the representation of the class.

8.    The matters stated in this declaration are true to the best of my knowledge, information and belief.

9.    I hereby certify, under penalty of perjury that the foregoing is true and correct.

Dated: October 21, 2009

JEFFREY P. ORLAN

2